UNITED STATES of America, Plaintiff-Appellee,

v.

Arturo GARCIA, Defendant-Appellant.

No. 79-5435
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 1, 1980.

Mario J. Martinez, El Paso, Tex., for defendant-appellant.

Le Roy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

In a bench trial, appellant Arturo Garcia was found guilty of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976). He was sentenced to 3 years in prison to be followed by 6 years special parole. He appeals to this Court, alleging that the trial court erred in failing to rule that he was illegally

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

arrested [1] and in failing to suppress the marijuana seized.

## THE FACTS

At approximately 11:30 A.M. on June 1, 1979, appellant arrived at a checkpoint on Highway 67 in Texas at the Presidio location which was being operated by border patrol agents Victor Cortez and Loretto Vasquez. Appellant was driving a Ford pick-up truck. Patrolman Cortez asked appellant about his citizenship and appellant responded, in broken English, that he was an American citizen. Noticing that appellant was nervous, Cortez asked for further proof of citizenship. His hands shaking, appellant produced a driver's license which he dropped on the seat of the pick-up truck.

Patrolman Cortez then looked between the cab and the rear bed of the pick-up truck. There he saw a rubber floormat covering the chassis frame and the drive shaft. In the bed of the pick-up, he observed four new bolts. Two of the bolts were assembled close to the cab and the other two at the rear of the bed of the truck. The bolts were a type not normally part of the truck at the time of purchase. Appellant was then ordered to drive his truck over to the secondary inspection site.

Patrolman Cortez proceeded to look underneath the bed of the pick-up, and noticed a concealed compartment which had been constructed by welding a sheet of metal under the bed of the truck. The compartment was approximately four feet by eight feet, and ten inches deep, large enough to conceal a human being. Cortez saw some bricks through some cracks, and also saw a plastic trash bag hanging from the bottom of the truck. When he touched the bag, seeds fell to the ground and he smelled marijuana.

1. Although appellant's brief does not identify very clearly the precise facts surrounding the arrest about which he complains, we assume that he is challenging as an illegal detention his reference to the secondary inspection site, and we discuss this challenge below. If appellant is challenging his actual arrest, his contention is without merit. He was actually placed under arrest only after the patrolman noticed appellant's nervousness, the floormat between the

Appellant Garcia was then arrested. The border patrol officers conducted a search of the truck and found marijuana concealed in the secret compartment and under the hood.

## THE REFERENCE TO THE SECONDARY INSPECTION SITE

Appellant Garcia argues that while the initial stopping and questioning of him by the border patrolman may have been permissible under the authority of *U. S. v. Brignoni Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) and *U. S. v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the officers were justified in restraining his freedom of movement, *i. e.*, arresting him, only if they had probable cause. Appellant's claim apparently is that his referral by the officers to the secondary inspection site constituted such an arrest requiring probable cause. Appellant argues that the officers had no probable cause at that point and thus his detention constituted an unlawful arrest.

■ Appellant is mistaken in his argument that his referral to the secondary inspection site must be founded on probable cause. It is clear that, at permanent checkpoints, stopping and questioning and referral of motorists to a secondary inspection area are permissible under the Fourth Amendment, even in the absence of any individualized suspicion, much less probable cause. *U. S. v. Martinez-Fuerte*, 428 U.S. 543 (1976) at 562–3, 96 S.Ct. at 3085; *U. S. v. Mireles*, 570 F.2d 1287, 1291 n.3 (5th Cir. 1978). The trial court, in orally ruling on appellant's motion to suppress found that the place where appellant was stopped was a permanent checkpoint under the criteria

cab and the bed of the truck concealing the chassis and drive shaft, the four unusual bolts in the truck bed, the secret compartment under the truck, the bricks which he could see through the cracks, and the seeds which fell from the plastic bag under the truck and which smelled of marijuana. The patrolman had probable cause to arrest appellant. *See U. S. v. Arredondo-Hernandez*, 574 F.2d 1312 (5th Cir. 1978).

set out in *Martinez-Fuerte, supra.* Appellant does not challenge this finding on appeal. The trial court's finding is supported by the evidence and we see no reason to disturb it. We hold that the stopping and questioning of appellant by border patrolmen and his subsequent referral to the secondary inspection site were constitutional, even assuming that the border patrol had no probable cause or reasonable suspicion.

### THE SEARCH

 Appellant next challenges, as a violation of the Fourth Amendment, the patrolman's visual examination of the exterior of his truck and the resultant discovery of the secret compartment containing marijuana. That search, he contends, was carried out in the absence of probable cause and the evidence which it produced should therefore be suppressed. We find this contention to be without merit. Patrolman Cortez had observed the floormat between the cab and the bed of the truck and the four new bolts in plain view after appellant's truck was stopped at the checkpoint. He then lawfully referred appellant to the secondary inspection site. *Martinez-Fuerte, supra.* The officer did not then initiate a search of the truck; rather he simply looked underneath the truck and saw the secret compartment, which had obviously been specially attached. The viewing of the secret compartment, like that of the floormat and bolts, was justified under the plain view doctrine. *U. S. v. Arredondo-Hernandez,* 574 F.2d 1312 (5th Cir. 1978). The patrolman made his observation from a place where he was lawfully entitled to be. The fact that he squatted to look underneath the truck does not render the plain view doctrine inapplicable. As this Court noted in *Arredondo-Hernandez, supra,* quoting from *James v. U. S.,* 418 F.2d 1150, 1151 n.1 (D.C.Cir. 1969):

> [t]hat the policeman may have to crane his neck, or bend over, or squat, does not

render the [plain view] doctrine inapplicable, so long as what he saw would have been visible to any *curious* passerby.

(emphasis added by *Arredondo-Hernandez* ).

As in *Arredondo-Hernandez,* the defendant's truck was lawfully stopped and the patrolman "was entitled to be in its vicinity as he made his cursory, *external* inspection." 574 F.2d at 1314 (emphasis in original).

 Under the authority of *U. S. v. Arredondo-Hernandez, supra,* the patrolman's observation in plain view of the specially attached secret compartment which was large enough to conceal illegal aliens (8′ × 4′ × 10″), combined with the permanent checkpoint location and the border patrolman's experience, gave rise, without more, to probable cause for the search of the compartment itself.[2] Appellant's argument that the search was conducted without probable cause is thus without merit. The judgment of the district court is accordingly

AFFIRMED.

---

2. Several additional factors are present in this case: the nervousness of the appellant; the fact that he spoke broken English; the fact that a floormat had been placed between the cab and the bed of the truck so as to conceal the chassis and drive shaft; and the fact that there were four brand new bolts in the bed of the truck which are of a type not normally found in a truck bed.