IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 2, 2016 Session

**STATE OF TENNESSEE v. DEMARCUS HOLMAN**

**Appeal from the Circuit Court for Shelby County
No. 1402971 John W. Campbell, Judge**

_____

**No. W2015-01744-CCA-R3-CD  -  Filed October 21, 2016**

_____

The trial court found that the Defendant, Demarcus Holman, was guilty of possession of a firearm as a convicted felon, a Class C felony.  The Defendant asserts that the conviction should be overturned on the basis of insufficient evidence.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Stephen Bush, District Public Defender, Harry E. Sayle III (on appeal), and Constance Barnes (at trial), Assistant District Public Defenders, for the appellant, Demarcus Holman.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Fouche, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HSITORY**

In 2007, the Defendant, Demarcus Holman, pled guilty to aggravated burglary, a felony conviction.  The Defendant admitted to this felony conviction at trial.  The record shows that his conviction was authenticated, and his fingerprints matched those from the record for the aggravated burglary conviction.

In 2013, the Defendant was riding in a vehicle with five other people: the Defendant's brother, Mr. Dominque Holman ("Mr. Holman"), Ms. Marquitta Stevenson, Ms. Dominque Hunter (the mother of the Defendant's children), and the Defendant's two children.[1] Mr. Holman was driving the vehicle, which belonged to Ms. Hunter. Shortly after the Defendant entered the vehicle, Mr. Holman pulled over to allow the Defendant to drive. Mr. Holman took the Defendant's seat in the backseat of the vehicle on the driver's side. At this point, Ms. Stevenson was sitting in the front passenger seat; Ms. Hunter was sitting in the backseat on the passenger side; and the children were seated in the backseat between Ms. Hunter and Mr. Holman.

Shortly after the Defendant started driving, the police pulled the vehicle over because the vehicle had a broken taillight and tags associated with another vehicle. Officer Michael Bartlett testified that, while still in the squad car, he noticed movement that appeared to him as if someone was placing an object in the center console. Ms. Hunter testified that the Defendant, upon being pulled over, turned around and told his children to sit down.

Officers Michael Bartlett and Kevin Tharpe approached the vehicle and requested the Defendant's license. Since the Defendant did not have his license, the officers asked the Defendant to exit the vehicle, searched the Defendant, and then placed him in the squad car. While escorting the Defendant to the squad car, the officers turned their backs to the vehicle but looked back towards the vehicle "from time to time." Mr. Holman testified that, as the officers took the Defendant to the squad car, he witnessed Ms. Stevenson take a gun from inside her purse and put it inside the center console of the vehicle. Mr. Holman acknowledged, however, that he did not inform the officers that Ms. Stevenson owned the gun. Ms. Hunter testified that she witnessed the same events transpire as Mr. Holman. Further, Ms. Hunter testified that she was aware of Ms. Stevenson's gun because she saw it earlier that same day in Ms. Stevenson's purse.

The officers searched the Defendant's name and date of birth, which revealed his prior conviction and his suspended license. This led the officers to arrest the Defendant for driving with a suspended license. As Officer Bartlett continued to process the Defendant, Officer Tharpe conducted a vehicle search that revealed a handgun in the vehicle's center console. Officer Tharpe testified that when law enforcement found the gun, Ms. Stevenson claimed that she owned the gun.

---

[1] Mr. Holman's first name is spelled "Dominique" in the presentence report, and Mr. Holman's and Ms. Hunter's first names are both spelled "Dominick" in the transcript of the sentencing hearing. We have chosen to use the spelling in the trial transcript.

Officer Bartlett testified that the Defendant told him that he knew that the gun was inside the vehicle, his cousin owned the gun, and the officers would find his fingerprints on the gun. The Defendant denied telling Officer Bartlett any of this.

After further investigation by the officers, Ms. Stevenson was arrested as well due to an outstanding warrant against her.

Sergeant Casey Minga later interviewed the Defendant at the Memphis Police Department. Sergeant Minga did not record the interview and did not obtain a signed statement from the Defendant. During the interview, the Defendant denied knowledge of the gun in the vehicle. Sergeant Minga testified that the Defendant told him that a man by the name of Tez was in the vehicle before the Defendant got in and that Tez left an object in the center console. Sergeant Minga testified that the Defendant told him that he did not know what the object was. Although the Defendant admitted to Sergeant Minga that his fingerprints would be on the gun, the Defendant explained to him that it was because the officers brought the gun to him while in the back of the squad car for identification. Sergeant Minga, however, testified that the officers would not have allowed the Defendant to handle the gun in such a manner. He also said that the Defendant told him that the Defendant denied ownership of the gun to the officer and that Ms. Stevenson had claimed ownership of the gun.

The Defendant testified that he was not in possession of the gun. He denied having knowledge of the gun in the vehicle. As mentioned above, the Defendant denied virtually all of the testimony of the officers and Sergeant Minga, except for providing his name and date of birth.

The jury found the defendant guilty of unlawful possession of a firearm by a convicted felon. The trial court held that the jury verdict was consistent with the law and the evidence presented.

## ANALYSIS

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence

contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins,* 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Even if the evidence is exclusively circumstantial, the evidence supporting a conviction may be sufficient. *State v. Majors,* 318 S.W.3d 850, 857 (Tenn. 2010). The amount of weight to be given to circumstantial evidence, the inferences to be drawn from circumstantial evidence, and the extent to which circumstantial evidence is consistent with guilt are questions for the jury. *Id.*

In *State v. Dorantes,* 331 S.W.3d 370, 381 (Tenn. 2011), the Tennessee Supreme Court held that circumstantial and direct evidence should be treated the same when the defendant appeals the sufficiency of the evidence. *Id.* at 380-81 (citing *Holland v. United States,* 348 U.S. 121, 140 (1954), for the proposition that "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence" because, while both may occasionally point to an incorrect result, the jury is tasked with resolving the probabilities and concluding the defendant is guilty beyond a reasonable doubt).

Tennessee Code Annotated section 39-17-1307(b)(1)(A) prohibits the possession of firearms by a person who "[h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon . . . ."

While the statute itself does not contain a requisite mental state, "intent, knowledge or recklessness suffices to establish the culpable mental state." T.C.A. § 39-11-301(c) (1990). Reckless conduct is when the defendant is "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur," and this disregard "constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." T.C.A. § 39-11-302(c).

Possession may be actual or constructive. *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "'In essence, constructive possession is the ability to reduce an object to

actual possession.'" *State v. Williams,* 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)).

Under the definition of a firearm, the Tennessee Code Annotated includes a handgun. T.C.A. 39-11-106(a)(11), (16).

The trial court found that the Defendant's aggravated burglary felony conviction was a crime of violence or force, and the defendant does not challenge this finding on appeal. *See State v. Foust*, 482 S.W.3d 20, 46 (Tenn. Crim. App. 2015) ("There is no dispute that the Defendant's prior convictions for aggravated robbery and aggravated burglary qualify as felony convictions involving the use of violence and force, respectively."); *see also* T.C.A. § 39-17-1301 (2014) ("'[c]rime of violence' includes any degree of murder, voluntary manslaughter, aggravated rape, rape, especially aggravated robbery, aggravated robbery, burglary, aggravated assault or aggravated kidnapping").

Viewing the evidence in the light most favorable to the State, the Defendant has not carried his burden; the evidence is sufficient to support a jury finding that the Defendant was a felon in possession of a firearm. Here, the Defendant, a convicted felon, acted at least recklessly by driving a vehicle that he knew had a firearm inside while his license was suspended. Officer Bartlett saw the Defendant put something in the console where the gun was later found. The Defendant admitted the gun would have his fingerprints on it. The officers testified that the Defendant gave inconsistent stories to account for the gun, including that it belonged to his cousin, it was Ms. Stevenson's, and it was left in the console by Tez. The Defendant simultaneously denied knowledge and provided explanations for how the gun came to be there and why it would have his fingerprints. Although the Defendant's witnesses testified that the gun was Ms. Stevenson's and that she had it in her purse while the Defendant was driving, the jury was at liberty to credit the testimony of the State's witnesses at trial. The handgun falls squarely in the definition of a firearm. Finally, the Defendant admitted to the aggravated burglary charge, which is "a felony involving the use or attempted use of force [or] violence . . . ." After viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient to satisfy the elements of this conviction beyond a reasonable doubt.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-